**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CHRISTOPHER KENNER                             CIVIL ACTION
A/K/A CHRISTOPHER SHABAZZ

VERSUS                                          NO. 12-1610

STEVE RADER, WARDEN                             SECTION "A"(5)
DIXON CORRECTIONAL INSTITUTE

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. §2254(e)(2).  For the following reasons, IT IS HEREBY RECOMMENDED that the instant petition be dismissed as time-barred.

I.  <u>PROCEDURAL HISTORY</u>

Petitioner, Christopher Kenner a/k/a Christopher Shabazz, is a state prisoner who is presently incarcerated at the Dixon Correctional Institute, Jackson, Louisiana.  On February 6, 1987, petitioner, in case number 318-143, was charged by bill of information in Orleans Parish Criminal District Court with forcible rape and aggravated crime against nature.[1]  Pursuant to the State's

---

[1] St. Rec. Vol. 1 of 10.

motion, the trial court ordered that "blood, culture and saliva samples" be taken from petitioner.[2]   The New Orleans Police Department Crime Laboratory performed a blood test which reflected that petitioner "is a group 'O' secretor."[3]  On September 15, 1987, petitioner proceeded to trial and was found not guilty on each count.[4]

On June 23, 1988, petitioner, in case number 327-373, was charged by grand jury indictment in Orleans Parish Criminal District Court with aggravated rape and aggravated kidnapping.[5]  In connection with that case, the Coroner's Office Forensic Laboratory performed tests on the victim, including testing of a vaginal swab and saliva sample.  These tests identified a "'B' blood group substance."[6]  Pursuant to petitioner's motion, on May 5, 1989, the trial court ordered that petitioner's blood be drawn and shipped to "Dr. Ivan Balazs, Lifecodes Corporation, 4 Westchester Plaza, Elmsford, New York, for testing and DNA identification."[7]  Almost a year later, on April 30, 1990, petitioner pleaded guilty, under

---

[2]Id.

[3]St. Rec. Vol. 9 of 10.

[4]St. Rec. Vol. 1 of 10.

[5]St. Rec. Vol. 3 of 10.

[6]St. Rec. Vol. 4 of 10.

[7]St. Rec. Vol. 4 of 10.  There is no evidence to suggest that the ordered testing was actually performed.  In any case, there is no evidence reflecting that the results were provided to petitioner.

North Carolina v. Alford, 400 U.S. 25 (1970),[8] to simple rape and simple kidnapping.[9]  On that same date, petitioner was sentenced to five years active probation as to each count to run concurrently.[10]

On March 23, 1992, petitioner was convicted on the charge of possession with intend to distribute cocaine following a jury trial in the Sixteenth Judicial District Court for the Parish of St. Mary.  Petitioner, based in part upon his 1990 Alford plea, was adjudicated to be a fourth felony offender and was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[11]  As a result of petitioner's conviction, the Orleans Parish Criminal District Court, in Case No. 327-373, terminated petitioner's probation unsatisfactorily.[12]

Years following his incarceration, petitioner requested the Orleans Parish District Attorney's file regarding his 1990 Alford

---

[8]In Alford, the Supreme Court recognized a defendant's right to enter a plea to the charged offense, and thereby accept the punishment of the court, without admitting factual guilt, as long as there exists a sufficient factual basis for the plea.

[9]St. Rec. Vol. 4 of 10.

[10]St. Rec. Vol. 2 of 10.

[11]St. Rec. Vol. 4 of 10, July 30, 1992 letter from the Louisiana Department of Corrections to Orleans Parish Criminal District Court.  The above information was also gleaned from the Louisiana First Circuit's opinion, 1992-KA-1979, denying petitioner's direct appeal of his 1992 conviction.  A copy of said opinion, not contained in the state court record, is attached hereto.

[12]St. Rec. Vol. 4 of 10.

plea.[13]  On February 17, 2004, almost 14 years later, petitioner

challenged his April 30, 1990 conviction, arguing:

> In this matter [his 1990 conviction in case number 327-373] the biological evidence from the victim submitted for analysis found the perpetrator is a type "B" blood secretor . . . .  Prior testing of the movant by the State in a[n] unrelated matter [case number 318-143] confirms he is a type "O" blood secretor . . . . Whether through inattention or lassitude, the state knew or should have known that such medical findings [provided] concrete proof . . . that he did not commit the charged offenses [in case number 327-373].  Instead, the State purposefully discounted this <u>compelling medical evidence</u> supporting innocence.[14]

On August 2, 2004, the state district court held a hearing,

following which the court granted petitioner post-conviction

relief.[15]  On review, the Louisiana Fourth Circuit Court of Appeal

summarized the applicable facts as follows:

> In the "motion for a valid sentence pursuant to La.C.Cr.P. art. 872," Mr. Kenner argues that his guilty plea cannot be deemed voluntary and intelligently entered when the State withheld exculpatory evidence that may have shown that he was not the perpetrator of the crimes. This evidence consists of two laboratory reports.
> In an unrelated criminal matter, relator's blood and saliva were tested and he was found to be a group "O"

---

[13]Petitioner does not specify the date he requested the district attorney's file but admits it was "years after he entered his <u>Alford</u> plea."  Rec. Doc. No. 1-2, p. 8 n. 2.

[14]St. Rec. Vol. 4 of 10, Memorandum in Support of Motion, p. 4 (emphasis original).  The state district court determined petitioner's motion for a valid sentence to be a post-conviction application and appointed present counsel to represent petitioner.

[15]St. Rec. Vol. 6 of 10, pp. 247-51.

secretor.  This crime laboratory report was made part of
the district attorney's file in the instant case.

The victim in the case sub judice was shown to be a
group "B" secretor.  Also, tests performed on various
samples containing seminal fluid showed the presence of
group "B" secretor activity.  Because no group "O"
secretor activity was noted in the crime laboratory
report, Mr. Kenner argues and has consistently maintained
that he is innocent.

State v. Kenner, 900 So.2d 948, 950-51 (La. App. 4th Cir. 3/23/05).

Thereafter, the Louisiana Fourth Circuit reviewed applicable

law:

The due process clause of the Fourteenth Amendment
to the United States Constitution requires the disclosure
upon request of evidence which is favorable to the
accused when the evidence is material to guilt or
punishment.  Brady v. Maryland, 373 U.S. 83, 83 S.Ct.
1194, 10 L.Ed.2d 215 (1963).  This rule has been expanded
to include evidence which impeaches the testimony of a
witness where the reliability or credibility of the
witness may be determinative of guilt or innocence.
Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d
104 (1972).  The Brady rule is based on due process of
law.  "[T]he prosecutor is not required to deliver his
entire file to defense counsel, but only to disclose
evidence favorable to the accused that, if suppressed,
would deprive the defendant of a fair trial, that is,
evidence favorable to the defendant which is material to
guilt or punishment."  State v. Rosiere, 488 So.2d 965,
970 (La.1986).  The test for determining materiality was
first established in United States v. Bagley, 473 U.S.
667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).  In Kyles v.
Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490
(1995), the Supreme Court outlined the considerations for
determining whether allegedly-suppressed evidence is
material; these factors were discussed by the Louisiana
Supreme Court in State v. Marshall, 94-0461 (La.9/5/95),
660 So.2d 819:

The issue is whether the exculpatory evidence
is material under the Brady-Bagley-Kyles line
of cases.  Evidence is material only if it is

5

> reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense. A reasonable probability is one which is sufficient to undermine confidence in the outcome. [United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)]. [The reviewing court] must provide a cumulative evaluation of the suppressed evidence, keeping in mind that [the defendant] does not have to show that, with the addition of the suppressed evidence, his trial would have resulted in acquittal or that there would be an insufficiency of the evidence to support a conviction. [The defendant] need only show that "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." Kyles, 115 S.Ct. at 1569.

State v. Marshall, 94-0461, pp. 19-20.

Id. at 952-53.

The Louisiana Fourth Circuit concluded:

> The state withheld evidence that Mr. Kenner was entitled to have. Experts, whose testimony is often complex, would have been required at trial to explain to the jury whether Mr. Kenner's classification as a Group "O" secretor would have included or excluded him as a possible suspect in the crimes. The jury would have been given the opportunity to weigh this evidence along with other evidence that the state may have produced to determine Mr. Kenner's culpability. Again, Mr. Kenner does not have to show that he would have been acquitted had he been privy to the withheld evidence. Instead, he must only show that a different result was reasonably probable. Mr. Kenner met his burden. The district court did not abuse its discretion in granting relief.

Id. at 953.

The Louisiana Supreme Court, however, granted the State's writ application and vacated the lower courts' rulings.   The supreme court held:

> Because the state makes a substantial showing that relator received the 1988 [sic] crime lab report before he entered his guilty plea, this Court remands the case to the district court to reconsider its conclusion that the state's withholding of exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), vitiated the voluntariness of relator's pleas entered under <u>North Carolina v. Alford</u>, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). <u>See</u> <u>State ex rel. Tassin v. Whitley</u>, 602 So.2d 721, 722 (La.1992)("When there is a factual issue of significance that is sharply contested," court should hold a hearing). In connection with its ruling, the district court should consider whether relator's equal or greater access to his own blood for testing and determining secretor status diminishes the significance of the state's failure, assuming that it occurred, to disclose a 1987 crime lab report prepared in an unrelated case indicating relator's secretor status.  <u>See</u> <u>State v. Hobley</u>, 99-3343, p. 25 n. 10 (La.12/8/99), 752 So.2d 771, 786 ("'There is no <u>Brady</u> violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose.'")(quoting <u>Coe v. Bell</u>, 161 F.3d 320, 344 (6th Cir.1998)); <u>see</u> <u>generally</u> <u>United States v. Newman</u>, 849 F.2d 156, 161 (5th Cir.1988)(government is not obligated to furnish defendant with information he already has or can obtain with reasonable diligence); <u>United States v. Miranne</u>, 688 F.2d 980, 987 (5th Cir.1982)("Under <u>Brady</u>, the government is not obligated to furnish a defendant with information which he already has.").

<u>State v. Kenner</u>, 917 So.2d 1081-82 (La. 2005).

On or about February 13, 2007, the New Orleans Police Department Crime Laboratory issued a report providing that there

was a "match" between petitioner's DNA and the DNA obtained from the 1988 vaginal swab.[16]

On December 18, 2007, pursuant to the supreme court's remand, the district court conducted a hearing.  After hearing arguments from counsel the court concluded that petitioner should not be expected to have known his blood type.  The court further found that the State knew that the results of the 1987 test, showing that petitioner "is a group 'O' secretor," did not match the 1988 test of a vaginal swab identifying a "'B' blood group substance."  The court concluded that the State was aware of this exculpatory evidence and instead of providing it to petitioner, the State allowed him to enter an <u>Alford</u> guilty plea.  Based upon the above findings, the district court, once again, granted petitioner's application for post-conviction relief.[17]  On review, the State argued, in part, that the "trial court's judgment should be overturned because the defendant is unable to prove that the laboratory report at issue [i.e., the 1987 report] exonerated him and because recent DNA testing confirms his guilt."[18] The Louisiana Fourth Circuit, however, affirmed the district court's decision. The court reasoned that because the above argument was not raised

---

[16]St. Rec. Vol 8 of 10.  In the report, the specimen obtained from the 1988 vaginal swab is referred to as "Specimen Number: NO3492S."

[17]St. Rec. Vol. 8 of 10, pp. 175-85.

[18]<u>State v. Kenner</u>, No. 2008-K-0176, p. 3 (La. App. 4th Cir. 6/17/08); St. Rec. Vol. 8 of 10.

before the district court, it "cannot be considered by this court."[19]

The Louisiana Supreme Court granted the State's writ application and again remanded the matter to the district court, providing:

> [W]e deem it appropriate to remand this case once again to the district court to settle the question of whether the evidence of relator's secretor status allegedly suppressed by the state, assuming arguendo that it was not equally available to respondent although the trial court had granted his request and signed two orders for the taking and analyzing of his blood, actually exculpates respondent. The district court is directed to produce respondent in open court for purposes of the taking of a buccal sample from him and to provide for further DNA testing to confirm or discount the results of the preliminary candidate match. The district court shall conduct a hearing and reconsider in light of the retesting and final DNA results whether the state's non-disclosure of respondent's secretor status, assuming that it occurred, led to the suppression of evidence indicating respondent's "absolute innocence," thereby vitiating the voluntariness of his <u>Alford</u> plea and requiring the grant of post-conviction relief.[20]

On July 19, 2010, the Louisiana State Police Crime Laboratory issued a report providing that the DNA profile from the 1988 vaginal swab was consistent with the DNA profile obtained from petitioner.[21]

_____

[19]<u>Id</u>.

[20]<u>State v. Kenner</u>, 989 So.2d 765, 766 (La. 2008).

[21]St. Rec. Vol. 10 of 10.

On August 5, 2010, in accordance with the supreme court's remand, the district court held another hearing on the matter.[22] After hearing testimony and counsel's arguments, the district court denied petitioner post conviction relief.  The court provided:

> The Supreme Court directed that the district court should conduct a hearing and also conduct DNA testing, to confirm or discount the preliminary match results.  And that DNA testing has been performed.  And the results have been turned over.  And it does confirm the preliminary match results as to Mr. Shabazz.  Also, the Supreme Court stated that upon disclosure of such results, that then we would go to the issue of whether or not it vitiates any <u>Alford</u> Plea or whether or not the post conviction relief should be granted.
> And, based on the results, which show that the sample that was obtained in the [1988] sexual assault kit does, in fact, match Mr. Shabazz, then at this time this Court is going to deny any motion for post conviction relief.  And I'm also going to deny any motion to withdraw the guilty plea . . . .[23]

On December 13, 2010, the Louisiana Fourth Circuit likewise denied petitioner relief, finding "no error in the ruling of the trial court."[24]  On June 24, 2011, the Louisiana Supreme Court denied petitioner's writ application without opinion.[25]

---

[22]This last hearing was conducted before Orleans Parish Criminal District Court Judge Keva Landrum-Johnson.  The prior hearings were held before Orleans Parish Criminal District Court Judge Calvin Johnson.

[23]St. Rec. Vol. 10 of 10.

[24]<u>State v. Kenner</u>, No. 2010-K-1232 (La. App. 4th Cir. 12/13/10); St. Rec. Vol. 10 of 10.

[25]<u>State v. Kenner</u>, 64 So.3d 217 (La. 2011); St. Rec. Vol. 10 of 10

II.  <u>FEDERAL HABEAS PETITION</u>

On June 22, 2012, petitioner filed his petition for federal habeas corpus relief in which he claims that his right to due process was violated:

> 1. When the Orleans Parish District Attorney's Office withheld material information regarding Petitioner's factual innocence prior to his 1990 <u>Alford</u> plea in violation of <u>Brady v. Maryland</u>, 373 U.S. 25 (1970);
>
> 2. When the Orleans Parish District Attorney's Office elicited an involuntary and unknowing <u>Alford</u> plea in violation of <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969) and <u>N. Carolina v. Alford</u>, 400 U.S. 25 (1970);
>
> 3. When the Louisiana Supreme Court ignored or overlooked <u>Brady</u>, <u>Alford</u>, and their progeny, to order post-conviction DNA testing under an "absolute innocence" standard;
>
> 4. When the Orleans Parish Criminal District Court attempted to perfect the Louisiana Supreme Court's legally flawed remand order by conducting [an] inherently flawed post-conviction DNA testing; and
>
> 5. When the Orleans Parish Criminal District Court relied on the unsound post-conviction DNA testing to rule that Petitioner had not established his "absolute innocence" instead of examining whether the State's failure to properly disclose the blood-type mismatch in 1990 was material to Petitioner's 1990 <u>Alford</u> plea.

The State filed a response in opposition to petitioner's habeas application alleging that this Court lacks subject matter jurisdiction, that petitioner is no longer "in custody" for his 1990 conviction, and that the instant action is untimely.

11

III.  <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254. The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir.1998)(citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).  The AEDPA therefore applies to petitioner's habeas application filed June 22, 2012.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir.1997)(citing 28 U.S.C. §2254(b), (c)).

The State asserts that the instant action is barred from review due to the "intertwined considerations of custody and subject matter jurisdiction" and because it is untimely.  For the following reasons, the Court finds that it has subject matter

---

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir.1992).

jurisdiction to adjudicate the instant action and finds that petitioner's habeas application is untimely.

IV.   <u>SUBJECT MATTER JURISDICTION</u>

Federal district courts have jurisdiction to entertain petitions for writs of habeas corpus only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§2241(c)(3) and 2254(a).   Once a sentence imposed for a conviction has completely expired, a federal habeas corpus petitioner is no longer considered to be "in custody" with respect to that conviction.   <u>Maleng v. Cook</u>, 490 U.S. 488, 492 (1989).   Because petitioner is not in custody based on the 1990 <u>Alfred</u> guilty plea conviction, the States argues that this Court lacks subject matter jurisdiction to entertain a challenge to that conviction.   <u>See</u> <u>Johnson v. Hubert</u>, Civ. Action No. 08-688, 2008 WL 1746727, at *2 (E.D.La. Apr. 11, 2008).

However, if a petitioner is "in custody" for a subsequent conviction, and if the sentence imposed for that subsequent conviction was enhanced based on the prior conviction, then the habeas corpus petition alleging the invalidity of the prior conviction may be construed as a petition challenging the subsequent sentence.   In that circumstance, the custody requirement is met and the jurisdictional problem no longer exists.   <u>Maleng</u>, 490 U.S. at 493-94.   That scenario is present in this case.

The State recognizes the above distinction and, as such, implicitly admits that this Court does indeed have jurisdiction over the instant action.[27]

V.   <u>TIMELINESS</u>

The State argues that the instant action is untimely because petitioner waited until February, 2004, to attack his 1990 <u>Alfred</u> guilty plea conviction.

The statute of limitations provision of the AEDPA at 28 U.S.C. §2244(d)(1) sets forth the following guidelines for purposes of determining the timeliness of a habeas petition.

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
> C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[27]<u>See</u> Rec. Doc. No. 10, p. 8.

In its memorandum,[28] the State sets forth each of the above subsections, A-D, and thoroughly and accurately sets forth the applicable facts and law clearly showing that whichever subsection is employed, the instant action is untimely.  Petitioner does not dispute the State's argument in this regard.  Nor does petitioner claim he is entitled to statutory tolling of the instant action.[29]  Thus, this matter must be dismissed as time-barred unless, as petitioner asserts, the one-year statute of limitations period is equitably tolled.

The United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights <u>diligently</u> and rare or extraordinary circumstances exist which prevented timely filing.  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>Fisher v. Johnson</u>, 174 F.3d 710, 713 (5th Cir. 1999), <u>cert</u>. <u>denied</u>, 531 U.S. 1164 (2001); <u>Cantu-Tzin v. Johnson</u>, 162 F.3d 295, 299 (5th Cir. 1998); <u>Davis v. Johnson</u>, 158 F.3d 806, 810 (5th Cir. 1998), <u>cert</u>. <u>denied</u>, 526 U.S. 1074 (1999). "A petitioner's

---

[28] <u>See</u> Rec. Doc. No. 10, pp. 12-19.

[29] The AEDPA provides for the interruption of the one-year limitations period, stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any  period of limitation under this subsection." 28 U.S.C. §2244(d)(2).  Petitioner makes no claim and the record does not reflect that he had a properly filed post-conviction application or other collateral review pending during the applicable time period.

failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006) (citing Felder v. Johnson, 204 F.3d 168, 174 (5th Cir. 2000). Equity is not intended for those who sleep on their rights. Fisher, 174 F.3d at 715.

Petitioner admits that he waited "years" before requesting the Orleans Parish District Attorney's file regarding his 1990 Alford plea. Thereafter, it was not until February 17, 2004, over 13 years after his 1990 Alford plea, that he challenged the plea. Petitioner's delay in this regard was of his own making, waiting an inordinate amount of time to seek a copy of the pertinent file. The Court notes that it is the petitioner who bears the burden of proving his entitlement to equitable tolling. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.), modified on reh'q 223 F. 3d 797 (5th Cir. 2000). Furthermore, Kenner fails to identify the date that he claims he became aware that relevant information had allegedly been withheld.  That date is crucial because it defines the period when equitable estoppel might apply.  Where a petitioner fails to present proof of the date on which he could have, with the exercise of due diligence, discovered facts supporting his claim, he is not entitled to the benefit of §2244(d)(1)(d).  Barnes v. Cain, 2008 WL 4298462, at *3-4 (E.D. La. September 16, 2008).

Additionally, after his state court post-conviction proceedings were concluded, petitioner waited two days short of a year before seeking relief from this Court. Petitioner's delay in this regard is more evidence of his lack of due diligence. <u>Johnson v. Quarterman</u>, 483 F.3d 278, 286 (5th Cir. 2007) (waiting until "last minute" to complete habeas petition demonstrates lack of diligence which cannot support application of doctrine of equitable tolling); <u>Walker v. Norris</u>, 436 F.3d 1026, 1032-33 (8th Cir. 2006) (same); <u>Butler v. Ryker</u>, 2010 WL 1790361, *3 (C.D. Ill. May 4, 2010) (same). The fact that Kenner was represented by counsel at the time that this 360 plus days of inactivity occurred gives him no solace. For even if counsel miscalculated the filing deadline, that does not warrant equitable tolling. <u>Whitley v. Cain</u>, No. 04-CV-2316, 2012 WL 397822 at *3 (E.D. La. Feb. 7, 2012)(Barbier, J.) <u>cert</u>. <u>of</u> <u>app</u>. <u>denied</u> No. 12-30215 (5th Cir. Nov. 19, 2012), <u>cert</u>. <u>denied</u>, ____ U.S. _____, 133 S.Ct. 1727 (2013) (quoting <u>Holland v. Florida</u>, ____ U.S. _____, 130 S.Ct. at 2563). "[A] garden variety claim of excusable neglect, such as the simple 'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling." <u>Holland</u>, ____ U.S. at ____, 130 S. Ct. at 2564_ (internal quotation marks and citation omitted).

Nevertheless, the Court has examined the record of <u>State v. Kenner</u>, Orleans Parish Cr.D.Ct. # 318-143, the 1987 proceeding in which the factual information alleged to be <u>Brady</u> material was

generated.   The Court notes that, pursuant to <u>Brady</u>, a constitutional violation occurs when exculpatory evidence is withheld from a defendant by the State.   In this case, no withholding of evidence is apparent.

In the 1987 proceedings, Kenner proceeded to trial and was acquitted of rape charges.   In preparation for trial, blood, culture and saliva samples were taken from Kenner at the request of the State by the NOPD Crime Lab, per Court order dated June 10, 1987.   In the State's motion seeking the aforementioned data, it was certified that "the defense will be provided with a copy of the results of any expert examination of said sample."   And, it was further ordered by the presiding judge that the "results of the expert examination of said samples be made available to the Court" by June 11, 1987 at 10:00 a.m. in "open Court".

Kenner's own counsel subsequently moved for the release of evidence for independent analysis and to obtain additional saliva and blood samples from Kenner.   That motion was granted on July 2, 1987.   In addition, the Criminal Sheriff was ordered to allow Dr. Milton Cox to have access to defendant for purposes of obtaining saliva and blood samples. The Court notes that a missive authored by Dr. Cox was introduced into evidence by Kenner's counsel at the trial. Two serology experts testified at Kenner's trial, both being called by the State, and at least one serology report was introduced into evidence along with various crime lab reports. The

crime lab report in question which identifies Kenner as a group "O" secretor was generated by Harry O'Neal, Criminologist II; Mr. O'Neal testified at Kenner's 1987 trial, where he was acquitted, at which time various crime lab reports were placed into evidence. Furthermore, it appears that Kenner's counsel had filed a motion for a bill of particulars seeking pre-trial discovery and that various written reports, including crime lab reports, were produced to Kenner in response to his request.

The Court notes that Kenner was represented by the same attorney, Martin Regan, in both the 1987 matter where he was acquitted and the case in which he entered his Alford plea which he claims now was involuntary because of the alleged withholding of serology information by the State.  Suffice it to say that Kenner was present during the entirety of his trial where he was acquitted of rape charges.  Kenner's blood/saliva information was public record following that trial.  Furthermore, his attorney who represented him in both cases had reason to have the information Kenner now claims was withheld from him.  That being the case, it is hard to fathom how Brady can be invoked successfully when there is every reason for Kenner to have known his blood type when he entered his Alford plea. Furthermore, the Louisiana Supreme Court basically concurred with this conclusion when it stated:

> Because the state makes a substantial showing that relator received the 1988 [sic] crime lab report before he entered his guilty plea, this Court remands the case to the district court to reconsider its conclusion ...

<u>State v. Kenner</u>, 917 So.2d 1081-82 (La. 2005).

Based upon the above, the Court finds that petitioner failed to exercise due diligence in seeking habeas relief and, as such, is not entitled to equitable tolling of his one-year statute of limitations.  More than twenty-five years has elapsed since Kenner sat through a trial where his blood type was at issue and where he and his counsel should have acquired the information which he now claims that he did not have.  This defies credibility. Accordingly;

RECOMMENDATION

IT IS RECOMMENDED that the petition of Christopher Kenner a/k/a Christopher Shabazz, for issuance of a writ of habeas corpus under 28 U.S.C. §2254 be DISMISSED WITH PREJUDICE as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass</u>

v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc) (citing 28 U.S.C. §636(b)(1)).[30]

New Orleans, Louisiana, this 21st day of January , 2013.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[30]Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.